McCAFFERY, *Appellant*, v. TIERNAN *et al.*

Division One, December 22, 1894.

**Fraudulent Conveyance:** EVIDENCE.   Defendant's mother had loaned him money at various times to use in his business, and also made him further loans to pay on the purchase price of two lots and to build a house thereon; defendant conveyed to her the house and lots, and, soon after, she conveyed the same in trust for defendant's wife, and the family thereafter lived on the premises.   When he transferred the property, defendant had a creditor who was not pressing him, and was also a surety on the bond of a defaulting constable, of whose default, however, he had no knowledge.   His mother, when the conveyance was made to her, did not know defendant was indebted or that he was surety on the bond.   Three years after the conveyance to the mother, plaintiff recovered judgment against defendant on the constable's bond.   *Held*, affirming the finding of the circuit court, that the conveyances were not in fraud of creditors.

*Appeal from  St. Louis City Circuit Court.*—HON. JOHN A. HARRISON, Judge.

AFFIRMED.

*T. J. Rowe* for appellant.

(1) Appellant is a prior and not a subsequent creditor.   The contingent liability arose immediately upon

the execution of the bond.   When the bond is executed the surety becomes *eo instanti* a debtor.   Bump on Fraudulent Conveyances, 491–498; *Anderson v. Anderson*, 64 Ala. 403; *Hoar v. Ward*, 4 Green, 195; *Bibb v. Freeman*, 59 Ala. 615; *Woodly v. Abby*, 5 Cal. 336; *Van Wyck v. Seward*, 18 Wend. 382; *Jackson v. Seward*, 5 Conn. 71.   (2) Subsequent creditors must prove actual fraud, but no such burden is on prior creditors.   Fraud may be inferred from facts calculated to establish it, and it should be inferred when the facts and circumstances are such as to lead a reasonable man to believe that the debtor is withdrawing his property from reach of his creditors with the intent to prevent them from recovering their debts. *State v. Ross*, 23 S. W. Rep. 208; *Hopkins v. Sievert*, 58 Mo. 202; *Massey v. Young*, 73 Mo. 273; *Butt v. Timmons*, 2 S. E. Rep. 780; *Fulkerson v. Sappington*, 15 S. W. Rep. 941; *Garesche v. McDonald*, 15 S. W. Rep. 381; *Funkhouser v. Lay*, 78 Mo. 458; *Ryan v. Young*, 79 Mo. 30; *Henderson v. Henderson*, 55 Mo. 535; *Ames v. Gilmore*, 59 Mo. 537; *Brickley v. Walker*, 32 N. W. Rep. (Wis.) 773; *Burgert v. Borchert*, 59 Mo. 80; *Jackson v. Beach*, 9 Atl. Rep. (N. J.) 380.   (3) In a contest between a wife and a creditor of her husband over property transferred to her by him, either directly or indirectly after the debt is contracted, she must establish that she is the *bona fide* purchaser by a preponderance of the evidence.   *Sloan v. Torrey*, 78 Mo. 625; *Cook v. Tull*, 20 S. W. Rep. 8; *Seitz v. Mitchell*, 94 U. S. 580; *Peterson v. Rone*, 41 N. W. Rep. (Iowa), 68; *Glover v. Flowers*, 7 S. E. Rep. (N. C.) 579; *Marmon v. Harwood*, 16 N. W. Rep. (Ill.) 236; *Marshall v. Strange*, 9 S. W. Rep. (Ky.) 250.   (4) One who, having knowledge, actual or constructive, of a debtor's fraudulent intent, aids him by purchasing his property, even though at its full value and for money, is a par-

ticipant in the fraud, and acquires no title as against creditors. *Shelley v. Booth*, 73 Mo. 74; *Dougherty v. Cooper*, 77 Mo. 528; *Frederick v. Allgaier*, 88 Mo. 598; *Sexton v. Anderson*, 95 Mo. 373; *Crawford v. Neal*, 144 U. S. 585; *Porter v. Gobel*, 55 N. W. Rep. 530; *Garesche v. McDonald*, 103 Mo. 7. (5) It is evident that if Tiernan had not failed in business and James Manley had not become a defaulter, the title to the property which enabled him to qualify on the bond of Manley would have remained in his name; therefore the transfers must have been made to hinder, delay and defraud his creditors, and should be declared fraudulent and void.

*H. D. Wood* for respondents.

(1) The authorities cited by appellant in support of his first point do not support the proposition that Nicholas Tiernan, when he signed the bond of Manley, the constable, as security, became *eo instanti* a debtor. No indebtedness thereon arose, even as against Manley, until upon demand of plaintiff he had failed to pay over funds realized, or until Manley had made returns showing that money due plaintiff had been realized. *Kirk v. Sportsman*, 48 Mo. 383. (2) The second point made by appellant that, "subsequent creditors must prove fraud, but that no such burden is upon prior creditors," is correct, where the conveyance attacked is shown to be voluntary. The proposition does not apply to a case like the present, where the plaintiff's own testimony shows that the conveyance was made in settlement of existing indebtedness. In such a case, fraudulent intent on the part of the grantor must be shown, and, also, that this intent was participated in by the grantee. *Co. v. Ring*, 118 Mo. 365; *Smith v. Riggs*, 56 Iowa, 488. Mrs. Abigail Tiernan, called by the plaintiff, testified that, when the conveyance was

made to her, she had no knowledge of any indebtedness of Nicholas Tiernan. But, even if she had knowledge, this court has held that "simple knowledge under such circumstances does not amount to a participation in the intended fraud. *Sexton v. Anderson*, 95 Mo. 379, and cases cited. The plaintiff, being a subsequent creditor, must, as stated by appellant, show actual fraud. *Stephenson v. Cook*, 64 Iowa, 265. (3) Relationship between the parties charged to have executed a fraudulent conveyance and the insolvency of the grantor are not sufficient in themselves to establish fraud; other facts must be shown. Fraud must be proved; it can not be presumed; and if the facts shown are consistent with an honest purpose, honesty in the transaction should be inferred. *Robinson v. Dryden*, 118 Mo. 534; *Renney v. Williams*, 89 Mo. 145; *Garesche v. McDonald*, 103 Mo. 10; *Rumbolds v. Parr*, 51 Mo. 592; *Ames v. Gilmore*, 59 Mo. 537. (4) The plaintiff in his petition averred that the conveyance from Nicholas to Abigail Tiernan was without consideration, and was made in furtherance of a conspiracy between them to defraud his creditors. At the hearing, the only witness he introduced was Abigail Tiernan, whose testimony was positive that the conveyance was made in good faith for a valuable consideration and in settlement of indebtedness due her, and that she had no knowledge of any indebtedness of Nicholas Tiernan. This testimony was corroborated by H. D. Wood and Nicholas Tiernan. Appellant can not now be heard to impeach the testimony of his witness Abigail Tiernan, and the bill was properly dismissed. *Chandler v. Fleeman*, 50 Mo. 240; *Shotwell v. McElhinney*, 101 Mo. 680.

BRACE, J.—On the sixteenth of November, 1883, Nicholas J. Tiernan acquired title, by purchase from one Ella S. Stone, for the consideration of $3,737.50,

to lots 23 and 24 in Abner Stone's subdivision, in United States survey number 1853, of the Grand Prairie Common Fields in the city of St. Louis, and, between that date and the first of July, 1884, erected a house thereon. On the tenth day of November, 1886, the said Nicholas became one of the sureties of James Manley, on his constable's bond, in the penal sum of $5,000. On the nineteenth of March, 1888, the said Nicholas, by general warranty deed, duly executed, acknowledged and recorded, his wife Elizabeth uniting therein, conveyed said premises to his mother, Abigail Tiernan, for the consideration of $10,000. Afterward, on the sixteenth day of June, 1888, the said Abigail, by general warranty deed, duly executed, acknowledged and recorded, conveyed the premises to Horatio D. Wood, for the sole and separate use of the said Elizabeth, wife, as aforesaid, of the said Nicholas, for the expressed consideration of $10,000.

On the eighth day of December, 1891, judgment was recovered by the plaintiff, James McCaffery, against the said Manley and his surety, the said Nicholas J. Tiernan, on said constable's bond, in the circuit court of the city of St. Louis, and execution for his damages, assessed at the sum of $653.69, awarded and issued, under which the premises were sold by the sheriff on the thirteenth of May, 1892, and the plaintiff became the purchaser thereof for the sum of $100, and received a sheriff's deed therefor, dated the ninth day of June, 1892.

Afterward, on the first day of August, 1892, the plaintiff instituted this suit in said circuit court against said Abigail Tiernan, Nicholas J. Tiernan, and Elizabeth, his wife, and the said Horatio D. Wood, trustee as aforesaid, by petition, charging that said deeds so executed by the said Nicholas J. to the said Abigail, and by the said Abigail to the said Wood, trustee for

the said Elizabeth, were without any consideration, and were made for the purpose of hindering, delaying and defrauding the plaintiff and other creditors of the said Nicholas J.

There was evidence tending to show that, at the time said Nicholas J. executed the deed of March 19, 1888, besides his liability on the constable's bond, he was indebted to the Schneider Brewing Company, on a promissory note, dated November 5, 1885, payable one year after date, for the sum of $1,269.85, with interest from date at the rate of six per cent. per annum.

It was admittted that the conveyance by Abigail Tiernan to Wood, trustee for her daughter-in-law, Elizabeth Tiernan, was a gift, and the only question before the court was, whether the deed of Nicholas J. was executed in fraud of his creditors.

In support of the charge the plaintiff introduced a single witness, the defendant, Mrs. Abigail Tiernan, aged about eighty years, a woman of ample means, being, at the time of the execution of said deed, in receipt of an income from her real estate, other than that in question, of from $300 to $350 per month, which real estate she had owned for over fifty years and afterward sold, in 1888, for $53,000. She testified, in substance, that she had for many years made her home with her son, Nicholas, and his wife, and had been in the habit of loaning him money as his business required, both before and after the execution of said deed, he paying interest thereon; that, when he purchased the lots in question, he lacked $1,500 of enough money to pay for them, and she loaned him that amount to complete the payment of the purchase price; that she, at different times between then and the first of July following, loaned him sums of money to build a home thereon, amounting in the aggregate to $7,000;

that upon these several loans he agreed to pay six per cent. interest; that the said principal sums, amounting to $8,500, together with the interest thereon to the date of the execution of said deed, amounting to about the sum of $10,000, remaining entirely unpaid and growing larger and larger, and her son being unable to pay the same except with said property, she requested him to convey the same to her in discharge of his indebtedness, and he did so by executing the deed aforesaid; that, at the time she took the deed from her son, she did not know that he was a surety on the constable's bond, and did not know that he was indebted to anybody; that she continued lending her son money at divers times after the execution of said deed, commencing in April, 1888, after she had sold her other property, such loans amounting to the sum of $24,000, to go into the "crucible business and things of that kind," concerning which she naively says "they always expected he was going to make a fortune out of it, and I was silly enough to let him have it, and he lost it." Mrs. Tiernan was getting extremely old at the date of these transactions, had made her home with her daughter-in-law for more than twenty years, and doubtless expected to do so for the remainder of her life, which, with, perhaps, a wholesome fear of the result of the "crucible business and things of that kind," suggest a sufficient and praiseworthy motive for conveying the common home to a trustee for the sole and separate use of her daughter-in-law. This was the substance of the plaintiff's case.

The witnesses examined for the defendants were Nicholas J. Tiernan and Mr. Wood, whose evidence tended to corroborate that of Mrs. Abigail Tiernan. Nicholas testified that, while at the time he executed the deed he was indebted to the brewing company on the promissory note aforesaid, he had a satisfactory arrangement with them and they were not pressing

him for the money, and that he did not know that Manley, the constable, had defaulted upon his bond, and that he had no other creditors. When Manley did make default on his bond does not appear, but the suit on it was not commenced until more than three years after the conveyances were made.

We deem it unnecessary to follow the argument of the learned counsel for the plaintiff, or take note of the numerous authorities cited in support of well known and well settled principles of equity jurisprudence for the detection of fraud. The force and bearing were doubtless urged with the same ability upon the consideration of the learned chancellor who tried the issues below as they are upon ours now, and were duly considered by him, as they have been by us. In their application to the facts in this case, however, they failed to satisfy him, and they fail to satisfy us, that any fraud was contemplated or committed in this transaction. It looked to him like an honest transaction, and so it looks to us. The judgment is affirmed. All concur.